IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re THE LOEWEN GROUP INC. | : | CIVIL ACTION |
| SECURITIES LITIGATION | : | |
| | : | |
| | : | NO. 98-6740 |
| | | |
| O'NEILL, J. | | OCTOBER 18, 2005 |

## MEMORANDUM

This is a class action in which plaintiffs allege that defendants, the Lowen Group, Inc.,

and individuals Raymond Loewen and Paul Wagler, committed securities fraud in violation of

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78(b) and 78(t),

and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.  Before me now is

defendants' motion for partial summary judgment, plaintiffs' response, and defendants' reply

thereto.[1]

## BACKGROUND

The factual background of this case can be found in my decisions of July 16, 2003, In re

The Loewen Group, Inc. Sec. Litig., No. 98-6740, 2003 WL 22436233 (E.D. Pa. July 16, 2003),

and August 18, 2004, In re The Loewen Group, Inc. Sec. Litig., No. 98-6740, at 2004 WL

1853137 (E.D. Pa. Aug. 18, 2004).  Nevertheless, I will briefly discuss the relevant facts here.

During the class period, the Loewen Group, Inc. ("TGLI") was the second largest

operator of funeral homes and cemeteries in North America and the largest operator of funeral

homes in Canada.  Leading up to the class period, TLGI expanded its business focus away from

---

[1] The Loewen Group, Inc. has filed a "Concurrence with Individual Defendants' Motion for Summary Judgment."

funeral homes and increased its percentage of assets with the acquisition of a large number of pre-need cemetery businesses.

Plaintiffs broadly allege that TLGI, by and through the individual defendants, orchestrated a comprehensive scheme to defraud investors by proliferating false and/or misleading statements to the public.   At the current stage of the litigation, three major claims survive.  First, Plaintiffs allege that defendants mislead investors by materially misstating the value of TGLI's businesses and properties.   Second, plaintiffs assert that defendants failed to record contingent losses on put/call agreements.  Third, plaintiffs allege that defendants failed to account properly for imputed interest on zero interest finance plans.  Defendants seek summary judgment only on the imputed interest claim.

Plaintiffs allege that TGLI's revenue and income reports were inflated because the company did not account properly for its zero percent financing incentive program.  In 1997, TLGI began a promotion focused on zero interest contracts for the sale of pre-need cemetery plots.  These contracts offered customers either a funeral service or burial at a guaranteed price in exchange for a small initial down payment and zero interest.   Generally Accepted Accounting Principles ("GAAP") require that companies "impute interest" when they offer no-interest installment contracts which last longer than one year. Pls.' Resp. Summ. J. 3.   "[R]evenue from sales on non-interest or low interest bearing contracts should be recorded based on the present value of future payments using an appropriate rate of interest.  The difference between the present value of the contractual payments and the total payments is imputed interest to be recognized as interest income." Id. at 3-4 (quoting Affidavit of Jeffrey W. Golan pursuant to Fed. R. Civ. P. 56(f)).

There were numerous publications during the class period that reported or reflected TLGI's revenue, income, and the value of its assets. It is not disputed that defendants disclosed the company's financial figures to the Securities and Exchange Commission, to various securities analysts, and to the public directly. The disclosures include press releases, interviews, and TLGI's Forms 10-K and Form 10-Q, Registration Statement, and Prospectus.

According to the plaintiffs, TGLI's revenue and income were overstated by $6.5 million for the first and second quarters of 1997 and $3.1 million for the first quarter of 1998 due to TGLI's failure to deduct imputed interest. Defendants do not deny using a no-interest payment plan. They also do not deny that they failed to account properly for imputed interest, as GAAP requires. While TGLI reported an increase of 2.4% in cemetery gross margins from the second quarter of 1996 to the second quarter of 1997, plaintiffs allege that if TGLI had deducted the imputed interest and provided an adequate reserve for accounts receivable the cemetery gross margin actually declined during that period. The complaint alleges that the first quarter 1997 Form 10-Q overstated TGLI's cemetery gross margin by approximately 6% as a result of its failure to properly deduct imputed interest. Id. It also alleges that the cemetery gross margins for the first quarter of 1998 were inflated by 22% because of TLGI's failure to record the $3.5 million in imputed interest and failure to create adequate reserves for uncollectible accounts receivable. Id. Plaintiffs allege that, in November 1998, these accounting errors led to adjustments that changed a net gain into a net loss of tens of millions of dollars.

Defendants allege that the company disclosed the failure to account properly for imputed interest on three occasions. The first disclosure was in TLGI's November 14, 1997 SEC filing. Defendants' second disclosure was in the March 11, 1998 Griffiths' Report. The third disclosure

was made in a November 5, 1998 press release issued by TLGI.  None of the disclosures listed by

the defendants had a significant effect on the price of TLGI's stock.[2]

As plaintiffs note, additional disclosures were made by TLGI throughout the class period.

On September 15, 1997, for example, TLGI disclosed $80 million charges for "reserves and

other adjustments" while also announcing strategic initiatives that would provide cost savings

and other benefits.  Am. Comp. 44-45.  TLGI did not specifically mention imputed interest in

this release, but these "other adjustments" included accounting for previously disregarded

imputed interest and resulted in a reported loss for the third quarter of 1997.  After this

disclosure, the stock price fell from $30.00 (closing on September 12, 1997) to $27.625 (closing

on September 15, 1997) and then to $25.250 (closing on September 16, 1997).  Additionally, the

volume of shares traded rose from 129,000 on September 12, 1997, to 849, 900 on September 15,

1997, 952,000 on September 16, 1997, and over a million shares traded on September 17, 1997

and September 18, 1997.

On October 6, 1998, TLGI announced that third quarter earnings were expected to be

significantly below consensus analysts' forecasts for the company.  The announcement did not

mention adjustments regarding imputed interest, but plaintiffs allege that the failure to meet

expectations was a result of further improper accounting of imputed interest.  After this

disclosure, the stock price fell from $12.50 (closing on October 5, 1998) to $12.625 (closing on

October 6, 1998) to $8.25 (closing on October 7, 1998) and then to $7.875 (closing on October 8,

1998).  Additionally, the volume of shares traded rose from 76,400 on October 5, 1998 to

---

[2] On the dates of disclosure listed by the defendants, the price of TLGI stock either
increased or decreased slightly after the information was made available publicly .

197,400 on October 6, 1998, 1,810,000 on October 7, 1998, and 1,676,300 on October 8, 1998.

For the most part, plaintiffs do not dispute that the improper accounting of imputed interest was disclosed on the dates alleged by the defendants. They argue, however, that those disclosures merely provided additional detail to information already known, and that the market's reaction to the imputed interest charges was already accounted for as part of the stock price drops in September 1997 and October 1998.

## DISCUSSION

A. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2005). Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-323. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 255.  In addition, "the existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972)).

B. Securities Fraud

"To state a claim for securities fraud under Section 10(b), plaintiffs must establish that defendants, "(1) made a misstatement or an omission of a material fact (2) with scienter (3) in connection with the purchase or sale of a security (4) upon which the plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury." In re Ikon Office Solutions, Inc. Sec. Litig., 277 F.3d 658, 666 (3d Cir. 2002).  Defendants' motion for summary judgment alleges that Plaintiffs have not met their burden regarding the first and fifth requirements of 10(b), materiality and loss causation.

1. Materiality

Materiality is a mixed question of law and fact.  "Only if the alleged misrepresentation or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of law." Weiner v. Quaker Oats Co., 129 F.3d 310, 317 (3d Cir. 1997) (citation omitted).  Summary judgment on the issue of materiality is generally considered inappropriate.  In TSC Industries, the Supreme Court stated: "The issue of materiality may be characterized as a mixed question of law and fact . . . .  The determination requires delicate

assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and those assessments are peculiarly ones for the trier of fact." 426 U.S. at 450. Summary judgment on the issue of materiality is appropriate only if the defendants demonstrate that reasonable minds could not consider the undisclosed information significant to the deliberations of a reasonable investor. Jaroslawicz v. Engelhard Corp., 704 F. Supp. 1296, 1298-99 (D.N.J. 1989).

Under section 10(b), plaintiffs must prove that defendants, in connection with the purchase or sale of a security, "made a materially false or misleading statement or omitted to state a material fact necessary to make a statement not misleading." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997). Material information consists of those facts that a reasonable investor might have considered as important in making a decision to buy or sell. Paul v. Berkman, 620 F. Supp. 638, 641 (W.D. Pa. 1985) citing Rochez Bros., Inc. v. Rhoades, 491 F.2d 402, 410 (3d Cir. 1974). "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). A determination of materiality "takes into account considerations as to the certainty of the information, its availability in the public domain, and the need for the information in light of cautionary statements being made." Klein v. Gen. Nutrition Cos. Inc., 186 F.3d 338, 342 (1999).

The defendants base their motion for summary judgment primarily on the efficient markets theory. "In the context of an 'efficient' market, the concept of materiality translates into information that alters the price of the firm's stock." Burlington Coat Factory, 114 F.3d at 1425.

7

The Court of Appeals has explained that "when a stock is traded in an efficient market, the materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock." Oran v. Stafford, 226 F.3d 275, 282 (3d Cir. 2000).  "This is so because efficient markets are those in which information important to reasonable investors . . . is immediately incorporated into stock prices." Burlington Coat Factory, 114 F.3d at 1425.  Therefore, if information is not material or important to a reasonable investor "its release will have a negligible effect on the stock price." Id. at 1425. "If the disclosure of certain information has no effect on stock prices, it follows that the information disclosed was immaterial as a matter of law." In re NAHC, Inc., Sec.. Litigation, 306 F.3d 1313, 1330 (3d Cir. 2002).

Despite defendants' arguments, the imputed interest claims are not immaterial as a matter of law.  "Most investors would consider it significant, no matter what the mix of information available, that a company was not earning as much as it was claiming to earn." Gebhard v. Conagra Foods, Inc., 335 F.3d 824, 830 (8th Cir. 2003).  Plaintiffs argue that each failure to properly deduct for imputed interest altered TLGI's reported earnings, in some cases changing a gain into a loss.  On both of the disclosure dates cited by the plaintiffs, the price of TLGI stock dropped significantly and trading volumes rose appreciably.  Because actual investors reacted to these disclosures, I find that a reasonable investor would be interested in knowing whether TLGI was earning money or losing it.  Therefore, the failure to report imputed interest is not immaterial as a matter of law.

The efficient market theory also does not preclude recovery in this case.  Although the defendants argue that the stock prices did not change as a result of the imputed interest

disclosures, enough genuine issues of material fact exist to prevent granting summary judgment. In most of the cases cited by the defendant, the dates of the announcement(s), adjustment(s) or disclosure(s) were undisputed.  See, e.g., In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1330 (3d Cir. 2002) (immaterial because of no change in stock price but no dispute to date of disclosure); Oran v. Stafford, 226 F.3d 275, 283 (3d Cir. 2000) (same).  I find the instant case to be distinguishable.  Here, defendants and plaintiffs disagree on the dates of disclosure.  Although the market did not react on the defendants' disclosure dates, the market reacted significantly on the plaintiffs' alleged disclosure dates.  This is a genuine issue of material fact.

2. Loss Causation

The defendants also argue that the plaintiffs have not offered sufficient evidence to prove loss causation as a matter of law.  "[T]he plaintiff shall have the burden of proving that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. 78u-4(b)(4) (2005).  "Whether the plaintiff has proven causation is usually reserved for the trier of fact."  EP Medsystems, Inc. v. Echocath, Inc., 235 F.3d 865, 884 (3d Cir. 2000).

Causation has three facets.  In re Catanella & E.F. Hutton & Co., Sec. Litigation, 583 F. Supp. 1388, 1414 (E.D. Pa. 1984).  First, the language of Section 10b-5 requires that the fraud must be "in connection with" a purchase or sale of a security.  Id.  Second, transaction or "but-for" causation, requires that the violations caused the plaintiff to engage in the transaction in question.  Id.  The third requirement of causation is "loss causation," whereby plaintiffs must prove that defendant's omission caused them economic harm.  See Sims v. Faestel, 638 F. Supp 1281, 1283 (E.D. Pa. 1986).  The loss causation requirement is satisfied if the misrepresentation touches upon the reasons for the investment's decline in value.  In re Phillips Petroleum Sec.

Litig., 881 F.2d 1236, 1244 (3d Cir. 1989).  "Typically, this requires the plaintiff to show that he

or she experienced an actual loss."  Tse v. Ventana Med. Sys., Inc., 297 F.3d 210, 218 (3d Cir.

2002); see also Semerenko v. Cendant Corp., 223 F.3d 165, 185 (2000).  As plaintiffs have

noted, however, "loss causation does not . . . require a corrective disclosure followed by a decline

in price."  In re Parmalat Sec. Litig., 376 F. Supp. 2d 472, 510 (S.D.N.Y. 2005).

      With respect to this section of their argument, defendants primarily rely on the Supreme

Court's recent decision in Dura Pharm., Inc. v. Broudo. 125 S.Ct. 1627 (2005).  In Dura, the

Court held that the mere allegation of purchasing a security at an inflated price does not satisfy

the loss causation requirement.  Id. at 1631.  "Dura explains that a plaintiff cannot prove loss

causation where an alleged loss could be the result of 'changed economic circumstances, changed

investor expectations, new industry-specific or firm-specific facts, conditions, or other events.'"

In re Bristol-Myers Squibb, Sec. Litig., 2005 WL 2007004 (D.N.J. 2005) (citing Dura, 125 S.Ct.

at 1630).  As the Supreme Court reasoned:

>      The securities statutes seek to maintain public confidence in the marketplace.
>      They do so by deterring fraud, in part, through the availability of securities fraud
>      actions.  But the statutes make these latter actions available, not to provide
>      investors with broad insurance against market losses, but to protect them against
>      those economic losses that misrepresentations actually cause.

Dura, 125 S.Ct. at 1633.  Under Dura, plaintiffs cannot satisfy the loss causation requirement by

claiming that they bought securities at inflated prices.  To survive summary judgment, plaintiffs

must demonstrate some actual loss.

      Plaintiffs have met their burden regarding loss causation.  Throughout the class period,

the price of TLGI stock dropped significantly, from $33.250 on March 5, 1997, to $5.125 on

January 14, 1999 and TLGI's market capitalization dropped by $2 billion.  Plaintiffs have

pleaded loss causation adequately by alleging that they purchased TLGI stock at an inflated price and lost money when the price fell.  They allege that the stock price fell as a result of the defendants' failure to properly record imputed interest, and have offered enough evidence on that point to survive summary judgment.  To prove loss causation at trial, plaintiffs face a stronger burden of persuasion and will probably need to rely on expert reports, but they have satisfied their burden at this time.

A significant portion of the defendants' loss causation argument relies on their immateriality argument–because the stock price did not change as a result of their proposed imputed interest disclosures the plaintiffs suffered no loss.  As discussed above, however, the disclosure dates and market reaction to TLGI's imputed interest accounting errors is in dispute. Because the existence and significance of any losses is unclear, loss causation is an inappropriate ground for summary judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re THE LOEWEN GROUP INC. | : | CIVIL ACTION |
| SECURITIES LITIGATION | : | |
| | : | |
| | : | NO. 98-6740 |
| | | |
| O'NEILL, J. | : | OCTOBER 18, 2005 |

<u>ORDER</u>

AND NOW, on this 18th day of October 2005, upon consideration of defendants' motion for summary judgment, plaintiffs' response, and defendants' reply thereto, and for the reasons set forth in the attached memorandum, the defendants' motion for summary judgment is DENIED.

   s/Thomas N. O'Neill, Jr.
THOMAS N. O'NEILL, JR., J.